UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81229-CIV-MARRA/JOHNSON

SOUTHWESTERN BELL MOBILE
SYSTEMS, LLC, as successor in interest
to NEW YORK HOLDINGS, LLC d/b/a
CINGULAR WIRELESS, n/k/a AT&T
MOBILITY LLC,

       Plaintiff,

v.

ALAN M. KAUFMAN,

       Defendant.
_____/

## ORDER AND OPINION

**THIS CAUSE** came before the Court upon Plaintiff Southwestern Bell Mobile Systems, LLC, as successor in interest to New York Holdings, LLC, d/b/a Cingular Wireless, n/k/a AT&T Mobility LLC's ("Plaintiff" or "AT&T") Motion for Summary Judgment and to Dismiss Defendant's Counterclaims (DE 44) and Defendant Alan Kaufman's ("Defendant" or "Kaufman") Cross-Motion for Summary Judgment (DE 48/54). The motions are fully briefed and ripe for review. See DE's 44, 45, 48, 54, 55, 61. The Court has carefully reviewed the motions, responses, and replies, where filed, and is otherwise fully advised in the premises.

**Background**

Plaintiff filed the present action to collect on personal guarantees allegedly made by Defendant. (See Compl., DE 1). Defendant, in turn, filed counterclaims for (1) breach of fiduciary duty, and implied covenant of good faith and fair dealing; (2) breach of contract; and (3) third party beneficiary. See DE 36, 38.

**Statement of Undisputed Material Facts**

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

1.  Defendant incorporated Harvard Cellular, Inc. ("Harvard Cellular") as a Massachusetts Corporation in 1991. (Declaration of Andrew B. Joseph in Support of Plaintiff's Motion for Summary Judgment ("Joseph Decl.") Ex. G, p. 2.)

2.  In April 2002, Harvard Cellular entered into an Authorized Agency Agreement with Plaintiff (the "Agency Agreement") to market and distribute Plaintiff's wireless telephone services in New York. (Joseph Decl. Ex. A, p. 16; Ex. F, p. 2; Complaint ¶ 7 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

3.  Defendant signed a verified petition in New York state court in which he specifically stated under oath that he is not a party to the April 2002 Agency Agreement. (Joseph Decl. Ex. H at ¶ 15).

4.  Plaintiff agreed to advance certain funds to Harvard Cellular in connection with Harvard Cellular's entry into the New York City market. (Complaint ¶ 8 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

5.  On April 11, 2002, Harvard Cellular and Plaintiff executed a letter agreement ("the First Letter Agreement") pursuant to which Plaintiff advanced $250,000 to Harvard Cellular ("the First Cash Advance"). (Joseph Decl. Ex. B; Complaint ¶ 9 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

6.  Kaufman executed a personal guarantee for the repayment of the First Cash Advance. (Joseph Decl. Ex. B; Complaint ¶ 10 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

7. No portion of the First Cash Advance has been repaid to Plaintiff. (Joseph Decl. Ex. F. pp. 4-5; Complaint ¶ 11 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

8. In May 2002, Plaintiff advanced an additional $100,000 (the "Second Cash Advance") to Harvard Cellular under a second letter agreement (the "Second Letter Agreement"). (Joseph Decl. Ex. C; Complaint ¶ 12 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

9. Kaufman executed a personal guarantee for the repayment of the Second Cash Advance. (Joseph Decl. Ex. C.; Complaint ¶ 13 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

10. No portion of the Second Cash Advance has been repaid to Plaintiff. (Joseph Decl. Ex. F, pp. 4-5; Complaint ¶ 14 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

11. Following execution of the Agency Agreement, Harvard Cellular leased five retail locations in Manhattan. (Joseph Decl. Ex. G, p. 3.)

12. Pursuant to a Market Development Agreement (the "MDF Agreement"), Plaintiff provided Harvard Cellular with additional funds to be used for approved construction and build-out costs at those locations. (Joseph Decl. Ex. D; Complaint ¶ 15 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

13. Kaufman personally guaranteed repayment of the funds advanced pursuant to the MDF Agreement. (Complaint ¶ 20 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

14. The parties later agreed to cap Harvard Cellular's and Kaufman's liability under the MDF Agreement at $375,000. (Joseph Decl. Ex. F. p. 4; Complaint ¶ 18 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

15. No portion of the MDF funds have been repaid to Plaintiff. (Joseph Decl. Ex. F, pp. 4-5; Complaint ¶ 21 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

16. Harvard Cellular launched operations in New York City in July 2002. (Joseph Decl. Ex. F. p. 2; Complaint ¶ 22 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

17. Harvard Cellular closed its New York City stores on December 23, 2002. (Joseph Decl. Ex. F, pp. 2-3.)

18. Neither Harvard Cellular nor Kaufman repaid any of the funds advanced by AT&T under the First and Second Letter Agreements or the MDF Agreement. (Joseph Decl. Ex. F, pp. 4-5; Complaint ¶¶ 9-21 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

19. On December 31, 2002, Plaintiff filed a demand for arbitration against Harvard Cellular with the American Arbitration Association, in accordance with the arbitration provisions contained in the Agency Agreement and the MDF Agreement (the "Arbitration Proceeding"). (Complaint ¶ 27 [D.E. #1]; Answer ¶ 1 [D.E. #36].)

20. An arbitration hearing was conducted over a period of nine days during February and March 2004. (Joseph Decl. Ex. G. p. 6.) The arbitrator entered judgment in favor of Plaintiff and against Harvard Cellular in the amount of $1,160,461.05 plus 9% simple interest running from July 1, 2003 (the "Award"). (Joseph Decl. Ex. F, p. 5.)

21. The Award included the $725,000 advanced to Harvard Cellular pursuant to the First Letter Agreement, Second Letter Agreement and MDF Agreement. (Id. at pp. 4-5.)

22. During litigation of the Arbitration Proceeding, Harvard Cellular asserted certain counterclaims against Plaintiff including fraudulent inducement, breach of contract and violations of the New York Franchise Sales Act. (Joseph Decl. Ex. F, p. 6.) Each counterclaim asserted by Harvard Cellular in the arbitration proceeding was addressed in detail by the arbitrator and all were denied. (Id.)

23. In September 2004, Plaintiff filed a petition to confirm the Award in the Supreme Court of the State of New York, County of New York. (Joseph Decl. Ex. G.) In response, Harvard Cellular filed a cross-motion seeking partial vacatur. (Id. at p. 9.) The cross-motion asserted that the arbitrator exceeded his power by failing to abide by the controlling law. (Id. at pp. 9-10.)

24. On April 11, 2006, the Hon. Ronald A. Zweibel, Justice of the Supreme Court, New York County, entered a Decision and Order rejecting Harvard Cellular's claims, denying its cross-motion and confirming the Award in its entirety. (Id. at pp. 22-23.)

**Standard of Review - Summary Judgment**

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. Id.

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and

admissions on file," designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (citations and quotations omitted).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir.1989).

**Standard of Review - Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food and Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  Id.

**Discussion**

Plaintiff's one-count complaint seeks enforcement of Kaufman's personal guarantee, that is, to recover funds that were advanced by Plaintiff to Harvard Cellular and personally guaranteed by Defendant under three separate contracts.

7

Under the April 11, 2002 First Letter Agreement, Plaintiff advanced $250,000 to Harvard Cellular, which amount was personally guaranteed by Kaufman pursuant to the section of the agreement entitled "Guarantee of Principal." Comp. Ex. B.  The Guarantee states: "I, the undersigned, guarantee, jointly and severally, the prompt and full payment of hereinafter due from the entity shown above under this Letter Agreement, and you may proceed directly against me without the need to proceed first against the above referenced entity." Comp. Ex. B.

Under the May 9, 2002 Second Letter Agreement, Plaintiff advanced $100,000 to Harvard Cellular, which amount was personally guaranteed by Kaufman pursuant to the section of the agreement entitled "Guarantee of Principal." Comp. Ex. C.   The Guarantee states: "I, the undersigned, guarantee, jointly and severally, the prompt and full payment of hereinafter due from the entity shown above under this Letter Agreement, and you may proceed directly against me without the need to proceed first against the above referenced entity." Comp. Ex. C.

Plaintiff also advanced Harvard Cellular funds for build-out costs pursuant to the April 11, 2002 MDF Agreement.  Comp. Ex. D.  Under the MDF Agreement, the funds were personally guaranteed by Kaufman pursuant to the section of the agreement entitled "Guarantee of Principal." Comp. Ex. D.   The Guarantee states: "I, the undersigned, guarantee, jointly and severally, the prompt and full payment of hereinafter due from the entity shown above under this Letter Agreement, and you may proceed directly against me without the need to proceed first against the above referenced entity." Comp. Ex. D.  The parties subsequently agreed to cap Harvard Cellular and Kaufman's liability under the MDF Agreement to $375,000.  Comp. ¶ 18; Answer ¶ 1.

It is undisputed that the monies personally guaranteed by Defendant under the above-described contracts, totaling $725,000, have not been repaid to Plaintiff.  Nonetheless, Defendant

8

argues Plaintiff's motion for summary judgment must be denied based on Defendant's claims (pled as a combination of affirmative defenses and counterclaims) that he was fraudulently induced by Plaintiff into signing the guarantees on the contracts and that Plaintiff breached the contractual agreements with him which excuse his performance as a guarantor.

Plaintiff asserts Defendant's claims are barred by the doctrine of res judicata because the New York Supreme Court Decision and Order confirming the Award already fully adjudicated the claims.[1]  Defendant responds that res judicata does not apply to preclude his claims in this case because they are factually different and/or were not raised in the New York action between Plaintiff and Harvard Cellular.

When a district court is asked to give res judicata effect to a state court judgment, it "must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." Kizzire v. Baptist Health System, Inc., 441 F.3d 1306, 1308 (11th Cir. 2006).  Under New York law, a party seeking to invoke the doctrine of res judicata must establish its propriety by satisfying three elements:  "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privy with them [and]; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Rosen v. Kessler, 15 Misc.3d 1139(A), 841 N.Y.S.2d 823 (N.Y.Sup. 2007), quoting Monahan v. City of New York Dept. of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted), cert. den. 531 U.S. 1035, 121 (2000).  Additionally, the rule applies not only to claims litigated but also to claims that could have been raised in the prior litigation, that is, all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory

---

[1] Plaintiff also argues that Defendant lacks standing to bring the counterclaims because he was not a party to the Agency Agreement between Plaintiff and Harvard Cellular.  However, Defendant was certainly a party to the guarantee agreements he signed, which are at issue in this lawsuit.

involving materially different elements of proof.  See City of New York v. Schmitt, 857 N.Y.S.2d 191, 192 (N.Y.A.D. 2 Dept. 2008).

Under New York State law, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Meagher v. Cement and Concrete Workers' Pension Fund, 921 F.Supp. 161, 164 (S.D. N.Y. 1997) (emphasis added).  A person, whose real interests are represented by a party to an action, is bound by and entitled to the benefits of res judicata. Roche v. Wagner, 229 N.Y.S. 2d 594, 600 (N.Y. Sup. 1962).  "Numerous cases in New York have held that where a person has the right to control the conduct of the litigation and appeal from the judgment, he could be estopped from relitigating the issues, even though he was not a party or a privy to the prior suit." Willsey v. Strawway, 255 N.Y.S.2d 224 (N.Y. Sup. 1963).  Under New York law, Kaufman, as president of Harvard Cellular, is in privity with Harvard Cellular for purposes of res judicata. See Prudential Lines, Inc. v. Firemen's Ins. Co. of Newark, N. J., 457 N.Y.S.2d 272, 275 n.* (N.Y.A.D. 1982) ("The doctrine of res judicata applies to parties and their privies (Carmody Wait 2nd 63:96) and while Autrey J. Dufrene was not formally named as a party in the Virginia suit, he undeniably is the President of American Tugs, Inc., and is in privity with his corporation.").

Thus, Defendant cannot raise claims here that were already adjudicated in the New York action, or that arise out of the same transaction or out of the same or related facts as the claims litigated in the New York action.  The Court will address the applicability of res judicata to Defendant's claims here.

As an affirmative defense, Defendant claims that Plaintiff fraudulently induced him into entering into the guarantee agreements based on "numerous representations including but not

limited to; the quality of the joint venture GSM network in New York, the availability of 'gait' phones, the number of activations Plaintiff was budgeting for the New York market for 2002, the cost to build out a Cingular Branded Store in Manhattan, the launch date being June 1, 2002, the number of handsets Plaintiff would have available at launch, the distribution plans of Plaintiff for 2002 and 2003, their ability to adequately finish the construction of the stores along with other pertinent information it did not share with Defendant/CounterPlaintiff." (Sec. Am. Aff. Def., DE 36 at ¶ 6).  These fraudulent inducement allegations all arise from the business relationship between Plaintiff and Harvard Cellullar during the brief period when Harvard Cellular operated in New York City and are all claims which run to Harvard Cellular and were or could have been raised by Harvard Cellular.  They are barred by res judicata because they were already adjudicated in the New York action or that arise out of the same transaction or out of the same or related facts as the claims litigated in the New York action.

Defendant also claims, as an affirmative defense, that Plaintiff breached the implied covenant of good faith and fair dealing.  (Sec. Am. Aff. Def., DE 36 at ¶ 9).  Specifically, Defendant asserts that Plaintiff led him to believe that it would assume the stores if he wanted to close them for any reason.  Id.  This allegations arises from the business relationship between Plaintiff and Harvard Cellullar during the brief period when Harvard Cellular operated in New York City and is a claim which was or could have been raised by Harvard Cellular in the New York action.  Thus, it is barred by res judicata because it was already adjudicated in the New York action or arises out of the same transaction or out of the same or related facts as the claims litigated in the New York action.

Defendant also claims, as affirmative defenses, that Plaintiff breached contracts for "fast start bonuses" related to securing leases and for repayment of operational expenses due to the

11

delayed launch date. (Sec. Am. Aff. Def., DE 36 at ¶ 7). Specifically, Defendant alleges that Plaintiff offered a $15,000 bonus for each lease it could deliver by a certain time, and that although Defendant delivered five leases to Plaintiff, Plaintiff never paid the bonuses, totaling $75,000. Defendant claims reliance on these funds to run the operations and that Plaintiff's breach resulted in less capital that anticipated to support operations. (Sec. Am. Aff. Def., DE 36 at ¶ 7). Defendant further alleges that Plaintiff told him it would repay the $45,000 in additional expenses incurred due to the one month delay of the launch date, but that Plaintiff failed to make the payment. Defendant claims this failure depleted the ability to run the operation with the necessary capital and ultimately played an integral role in the closing of all five retail stores. (Sec. Am. Aff. Def., DE 36 at ¶ 7). Defendant asserts that these breaches by Plaintiff excuse his performance as a guarantor under the agreements at issue. These breach of contract allegations for payments for securing leases and for repayment of operational expenses arise from the business relationship between Plaintiff and Harvard Cellullar during the brief period when Harvard Cellular operated in New York City and are claims which were or could have been raised by Harvard Cellular in the New York action. Thus, they are barred by <u>res judicata</u> because they were already adjudicated in the New York action or arise out of the same transaction or out of the same or related facts as the claims litigated in the New York action.

Accordingly, as there are no genuine issues of material fact precluding summary judgment for Plaintiff in its present action to collect on personal guarantees made by Defendant[2], Plaintiff is entitled to judgment as a matter of law and the Court must grant Plaintiff's motion for summary judgment on its claim. The Court will now turn to Defendant's counterclaims.

---

[2] Defendant also asserts the affirmative defense that he was bound by a non-compete covenant which prevented him from opening stores for another wireless carrier in the New York Metropolitan market for a year. (Sec. Am. Aff. Def., DE 36 at ¶ 8). This is not an affirmative defense to failure to pay on the personal guarantees at issue in this case.

Defendant brings three amended counterclaims: (1) Breach of fiduciary duty, and implied covenant of good faith and fair dealing; (2) Breach of contract; and (3) Third party beneficiary. See DE 36 at ¶ 12-16. Plaintiff moves to dismiss all three counterclaims, on various grounds.

Defendant's first two claims are barred by res judicata, as they all run to Harvard Cellular's business relationship with Plaintiff, not to Defendant as an individual. Moreover, they merely recycle the counterclaims raised by Harvard Cellular in the New York action (number of activations, build-out, quality of network, special corporate pricing), or are claims that could have been brought by Harvard Cellular. The third claim, entitled third party beneficiary (Sec. Am. Cntrcl., DE 36 at ¶ 16), fails to state a claim under any viable theory and must be dismissed as wholly deficient. See U.S. v. Baxter Intern., Inc., 345 F.3d 866, 881 (11th Cir. 2003). This "counterclaim" lacks any substantive elements and fails to plead any grounds entitling Defendant to relief. See Berry v. Budget Rent A Car Systems, Inc., 497 F.Supp.2d 1361 (S.D. Fla. 2007). Accordingly, Defendant's counterclaims are dismissed, with prejudice.[3]

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Summary Judgment and to Dismiss Defendant's Counterclaims (DE 44) is **GRANTED**.

(2) In view of the fact that the Court has granted Plaintiff's motion to dismiss Defendant's counterclaims, Defendant's Cross-Motion for Summary Judgment (DE 48/54) is **DENIED**.

(3) Plaintiff has until Friday, October 9, 2009 to file a motion addressing its entitlement

---

[3] Defendant's first two counterclaims are dismissed with prejudice because they are barred by res judicata. The third counterclaim is dismissed with prejudice because, based on the wholly deficient pleading, it appears that any attempt to amend would be futile.

to and the amount of any prejudgment interest sought.  See Venn v. St. Paul Fire and Marine Ins. Co., 99 F.3d 1058, 1066, 1068 n.14 (11th Cir. 1996) (In a diversity case, both the questions of entitlement to prejudgment interest and the interest rate to be applied are determined under state law); Royster Co. v. Union Carbide Corp., 737 F.2d 941, 948 (11th Cir. 1984) ("In a diversity case we follow the state law governing the award of interest."). In absence of such motion, or upon notice to the Court that Plaintiff is waiving its claim for prejudgment interest, the Court shall enter a final judgment and close this case.

**DONE AND ORDERED** in Chambers, West Palm Beach, Palm Beach County, Florida, this 29th day of September, 2009.

_____
KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE

copies to:

All counsel of record

Alan M. Kaufman, pro se
99 SE Mizner Blvd #736
Boca Raton, FL 33432